**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
In re:

    ERIC BEN-ARTZI
    a/k/a Achikam Ben-Artzi,

                          Debtor.
------------------------------------------------------------------------x

NOT FOR PUBLICATION

Chapter 7

Case No. 21-10470 (MG)

**MEMORANDUM OPINION AND ORDER OVERRULING DEBTOR'S OBJECTION
AND GRANTING MOTION TO APPROVE RULE 9019 SETTLEMENT**

*A P P E A R A N C E S:*

TARTER KRINSKY & DROGIN, LLP
*Attorneys for Deborah J. Piazza, as Chapter 7 Trustee*
1350 Broadway, 11th Floor
New York, NY 10018
By:    Jill Makower, Esq.

DEBTOR
Eric Ben-Artzi, *Pro Se*
1442A Walnut Street, #111
Berkeley, CA 94709

HALPERIN BATTAGLIA BENZIJA, LLP
*Attorneys for Kilgour Williams Group, Inc., Daniel Williams, and Colin Kilgour*
40 Wall Street, 37th Floor
New York, NY 10005
By:    Christopher J. Battaglia, Esq.

OFFICE OF THE UNITED STATES TRUSTEE
201 Varick Street, Suite 1006
New York, NY 10014
By:    Richard C. Morrissey, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of Deborah J. Piazza, the Chapter 7 trustee (the "Trustee") of Eric Ben-Artzi a/k/a Achikam Ben-Artzi (the "Debtor" or "Ben-Artzi"), seeking approval pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") of a proposed stipulation, dated September 20, 2021 (the "Stipulation"), between the Trustee and Kilgour Williams Group, Inc. ("KWG"), Daniel Williams ("Williams"), and Colin Kilgour ("Kilgour" and, together with KWG and Williams, the "Plaintiffs/Appellees"). ("Motion," ECF Doc. # 29.) The Debtor filed an objection to the Stipulation. ("Objection," ECF Doc. # 34). On November 8, 2021, the Court held a hearing on the Motion (the "Hearing") and requested additional briefing in support of and in opposition to the Stipulation. (*See* "Hr'g Tr.," ECF Doc. # 42 at 27:8–15.) The Trustee and Plaintiffs/Appellees thereafter filed a joint statement in support of the Motion. ("Joint Statement," ECF Doc. # 36.) The Debtor filed a response to the Joint Statement ("Response," ECF Doc. # 38), and three notes in addendum to the Response. (ECF Doc. ## 39, 40, 41.)

For the reasons discussed below, the Court **OVERRULES** the Objection and **GRANTS** the Motion.

**I.    BACKGROUND**

**A.    The Dispute Between the Debtor and the Plaintiffs/Appellees**

The current dispute arises out of a whistleblower claim ("Whistleblower Claim") that Ben-Artzi filed with the SEC in 2011 against his former employer, Deutsche Bank. As a result of the Whistleblower Claim, the SEC imposed $55 million in civil penalties against Deutsche Bank in 2015, with a Whistleblower Award (defined below) to Ben-Artzi of $8.25 million. (Joint Statement ¶¶ 10, 11.) Ben-Artzi was assisted by counsel, Labaton Sucharow LLP

2

("Labaton"), and by several experts (identified below), in investigating and preparing his Whistleblower Claim. (*Id.* ¶¶ 5, 6.) Ben-Artzi entered into a series of written agreements to share any award with the experts. (*Id.* ¶¶ 6, 9, 15.) Ben-Artzi and his then wife also found themselves as parties to a contentious divorce proceeding in the State of Washington, which resulted in orders from the divorce court requiring Ben-Artzi to pay a substantial portion of his share of the Whistleblower Award to his former wife and to his children. (*Id.* ¶¶ 7, 8, 18–20.) Ben-Artzi reneged on his written agreements to share the award with the experts and the experts sued Ben-Artzi for breach of contract in New York Supreme Court. (*Id.* ¶ 17.) Ben-Artzi defended the case, but the plaintiffs prevailed, obtaining summary judgment in very substantial amounts described more particularly below. (*Id.* ¶¶ 31–35.) Ben-Artzi appealed the summary judgment, but before perfecting the appeal, he filed this Chapter 7 case. (*Id.* ¶¶ 38–40.) Whatever rights Ben-Artzi had from the Whistleblower Award are property of the estate. More than $2 million in claims have been filed in this case, mostly by those claiming entitlement to a share of the Whistleblower Award based on the state court judgments and orders.

The Trustee had to decide whether to prosecute the appeal, or endeavor to settle with the judgment creditors. This required the Trustee to evaluate the merits of the pending unresolved appeal. The Trustee did so, and ultimately decided to settle. The Stipulation and Motion seek approval of her resolution of claims. In light of the Debtor's Objection, the Motion and initial supporting papers were woefully inadequate for the Court to decide whether to approve the Stipulation and the Court required further briefing. Now that briefing is completed, the Court concludes that the Motion should be granted.

  **B. Ben-Artzi's Agreement to Split Any Whistleblower Award**

On April 23, 2013, Ben-Artzi's wholly owned company, Model Risk, entered into an agreement (the "Expert Agreement") with KWG concerning the Whistleblower Claim. (Joint

3

Statement ¶ 6.) Pursuant to the Expert Agreement, KWG agreed to render expert consulting services in support of the Whistleblower Claim in exchange for three percent (3%) of the gross value of any whistleblower award by the SEC on account of the Whistleblower Claim. (*Id.*)

On August 1, 2014, the Debtor, acting through Model Risk, entered a "Tri-Party Agreement" with the Plaintiffs/Appellees. (*Id.* ¶ 9.) The Tri-Party Agreement modified the Expert Agreement, increasing the KWG fee from three percent (3%) to five percent (5%) of any whistleblower award on account of the Whistleblower Claim, and transferring to the Plaintiffs the intellectual property in the work product that KWG developed in connection with the Expert Agreement. (*Id.*) The Plaintiffs/Appellees also agreed to submit their own whistleblower claim to the SEC (the "KWG Whistleblower Claim") and to pay Model Risk 60% of any award that they received on account of the KWG Whistleblower Claim. (*Id.*)

On June 30, 2015, the SEC imposed civil penalties on Deutsche Bank of $55 million for violations of the Securities and Exchange Act. (*Id.* ¶ 10.) On July 27, 2016, the SEC awarded the Debtor the $8.25 million (the "Whistleblower Award"), calculated as fifteen percent (15%) of the monetary sanctions collected or to be collected from Deutsche Bank on account of the Whistleblower Claim. (*Id.* ¶ 11.)

The SEC denied the KWG Whistleblower Claim and took judicial notice that the Divorce Decree (defined below) directed the Debtor to pay the Plaintiffs' expert fees. (*Id.* ¶ 12.) Further, the SEC expressly recognized that the Plaintiffs may wish to pursue a claim to a portion of the Whistleblower Award. (*Id.*) The Plaintiffs/Appellees appealed the SEC's denial of the KWG Whistleblower Claim, and the Second Circuit affirmed the denial on November 8, 2019. (*Id.* ¶ 22.)

4

On August 18, 2016, the Debtor published an editorial in the *Financial Times* stating that he would not accept the Whistleblower Award. (*Id.* ¶13.) Thereafter, the Debtor, Kilgour, and Williams executed a written letter agreement, dated August 24, 2016 (the "Letter Agreement," ECF Doc. # 36-1), pursuant to which the Debtor agreed to request that the SEC Office of the Whistleblower direct payments as follows: (a) $247,500 to KWG under the Expert agreement (b) $1,250,000 to Kilgour; and (c) $1,250,000 to Williams. (Joint Statement ¶ 15.)

### C. Ben-Artzi's Divorce Proceeding

In 2013, the Debtor's then wife, Gillian Hopson ("Hopson"), commenced divorce proceedings against Ben-Artzi in the Superior Court of the State of Washington for Whatcom County (the "Divorce Court"). (*Id.* ¶ 7.) On May 21, 2014, the Divorce Court issued a Decree of Dissolution (the "Divorce Decree") that, amongst other things, awarded Hopson 50% of the Net Proceeds of the Whistleblower Claim. (*Id.* ¶ 8.)

On August 24, 2018, the Divorce Court entered its *Findings/Order on Petitioner's Motion to Update Consolidated Judgment, Disbursement of SEC Award and Other Relief* ("August 2018 Order"). (*Id.* ¶ 18.) The August 2018 Order clarified the definition of "Net Proceeds" as the gross award from the SEC, less the 18% fee to Labaton, and the 3% fee to KWG. (*Id.*) The August 2018 Order also awarded the Debtor 50% of the Net Proceeds, in the amount of $3,258,750, but provided that $828,186.25 of such amount was to be put in a professionally managed investment account, with Hopson or her designee to act as trustee. (*Id.* ¶ 19.)

The Debtor sent an email to the SEC, dated August 14, 2019 (the "August 14 SEC Email"), requesting that the SEC direct payments to KWG, Kilgour, and Williams for the amounts specified under the Letter Agreement. (*Id.* ¶ 21.) The August 14 SEC Email also provided that: "This is merely a request that neither creates an obligation nor acknowledges an

5

entitlement to any moneys by Messrs. Kilgour or Williams." (*Id.*)  In the August 14 SEC Email, the Debtor also imposed additional conditions (not contained in the Letter Agreement), that the payments to the Plaintiffs/Appellees not take precedence over his tax liabilities or his "other lawful obligations." (*Id.*)

The Debtor sent another email to the SEC, dated December 3, 2019 (the "December 3 SEC Email"), that instructed the SEC to pay the sums he owes to his former wife under the Divorce Decree and to hold everything else pending resolution of the State Court Action (defined below). (*Id.* ¶ 24.)  The December 3 SEC Email also stated that the "SEC is not to distribute any portion of my award to anyone without first obtaining my consent." (*Id.*)

### D.   Plaintiffs/Appellees New York State Court Lawsuit Against Ben-Artzi

On August 16, 2018, the Plaintiffs/Appellees commenced an action in the New York Supreme Court, New York County (the "State Court") against the Debtor and Model Risk, Index No. 654091/2018 (the "State Court Action"), seeking damages for breach of contract, specific performance, and declaratory judgment. (*Id.* ¶ 17.)  The Debtor admitted in the State Court Action that Model Risk is defunct. (*Id.* ¶ 17 n.3.)

On January 15, 2020, the State Court ordered the Debtor's then counsel to hold up to $1,807,726.37 in its attorney escrow account (the "January 15 Order"). (*Id.* ¶ 25.)  On June 4, 2020, after the Debtor terminated his counsel in the State Court Action and hired new counsel, the State Court ordered the Debtor's new counsel to instruct the SEC to pay to the escrow account of Harwood Law PLLC, $1,807,726.37 from the funds that the SEC disburses from the Debtor's Whistleblower Award, to be held pursuant to the January 15 Order. (*Id.* ¶ 27.)  The

6

Debtor's counsel directed that instruction to the SEC by email on June 4, 2020 (*id.*), and on July 22, 2020, the SEC paid $1,807,726.37 to the Plaintiff's counsel's escrow account.[1] (*Id.* ¶ 30.)

The Plaintiffs/Appellees moved for summary judgment in the State Court Action (the "Summary Judgment Motion") arguing that the undisputed facts proved all the elements of a claim for the Debtor's breach of the Letter Agreement. (*Id.* ¶ 31.) The Debtor opposed the Summary Judgment Motion and raised a new unconscionability defense. (*Id.* ¶ 33.)

On September 2, 2020, the State Court heard oral argument on the Summary Judgment Motion and rendered a decision on the record, holding as a matter of law that the Debtor anticipatorily breached the Letter Agreement. (*Id.* ¶ 34.) That same day, the State Court entered an order (the "Summary Judgment Order," ECF Doc. # 36-2) granting the Summary Judgment Motion and holding that the Debtor anticipatorily breached the Letter Agreement "by his statements to the Divorce Court making no provision for payment to plaintiffs, by sending the [August 14 SEC Email] request to the SEC with extra-contractual terms, and by subsequently sending [the December 3 SEC Email with] contradictory instructions to the SEC which indicated the SEC should not pay plaintiffs as agreed." (Joint Statement ¶ 34 (quoting Summary Judgment Order at 10).) The Summary Judgment Order also directed the Clerk to enter judgment: (1) in favor of KWG and against the Debtor and Model Risk, jointly and severally, in the amount of $247,500 with prejudgment interest at 9% per annum from December 31, 2018, (2) in favor of Williams and against the Debtor and Model Risk, jointly and severally, in the amount of $1,250,000 with prejudgment interest at 9% per annum from December 31, 2018, and (3) in

---

[1] The Trustee states that in or around July 2020, the SEC transferred $4,129,087.385 to the Divorce Court, representing the $3,955,012.38 due to Hopson, plus interest from February 1, 2018 through February 28, 2020, and on or about July 22, 2020, the SEC transferred $826,186.256 to the client trust account of Hopson's Seattle counsel Corr Cronin. (Joint Statement ¶¶ 28–29.)

7

favor of Kilgour and against the Debtor and Model Risk, jointly and severally, in the amount of $1,250,000 with prejudgment interest at 9% per annum from December 31, 2018. (*Id.* ¶ 34.)

On October 8, 2020, the State Court entered a judgment (the "Judgment") in favor of KWG against the Debtor and Model Risk, jointly and severally, in the amount of $287,313.06; in favor of Williams against the Debtor and Model Risk, jointly and severally, in the amount of $1,449,746.14; and in favor of Kilgour against the Debtor and Model Risk, jointly and severally, in the amount of $1,449,746.14. (*Id.* ¶ 35.)

On December 11, 2020, the State Court ordered Plaintiffs/Appellees' counsel to deliver to Plaintiffs $1,807,726.37 that was held in its escrow account, and Plaintiffs/Appellees counsel did so on that date. (*Id.* ¶ 36.)

On December 24, 2020, the State Court entered a judgment in favor of the Plaintiffs/Appellees against the Debtor and Model Risk, jointly and severally, in the amount of $466,236.55, for legal fees. (*Id.* ¶ 37.)

### E.     The Debtor's Appeal of the State Court Judgment

On September 27, 2020, the Debtor filed a Notice of Appeal (the "Appeal"), appealing the Summary Judgment Order "to the extent such Order grants plaintiffs' motion for summary judgment and denies defendants' cross-motion for summary judgment." (*Id.* ¶ 38.) The Debtor did not appeal the December 11, 2020 order. (*Id.*)

### F.     The Debtor's Chapter 7 Filing and the Proofs of Claims Filed

The Debtor filed a voluntary Chapter 7 Petition in this Court on March 11, 2021 (the "Petition Date"). (*Id.* ¶ 40.) The Trustee states that there are no funds in the Debtor's estate. (*Id.* ¶ 43.)

The last date for creditors to file a proof of claim in the Debtor's Chapter 7 case was July 19, 2021. (*See Notice of Possible Payment of Dividends and Last Date to File Claims*, ECF Doc.

8

# 11.) Five claims were filed before July 19, 2021, four of which were filed by the Plaintiffs/Appellees. (Joint Statement ¶ 44.) Calvary SPV I, LLC filed a proof of claim (Claim No. 1) asserting a general unsecured claim against the Debtor in the amount of $3,119.64. (*Id.* ¶ 45.) KWG filed a proof of claim (Claim No. 2) asserting a general unsecured claim against the Debtor in the amount of $307,149.47.[2] (*Id.* ¶ 46.) Williams filed a proof of claim (Claim No. 3) asserting a general unsecured claim against the Debtor in the amount of $598,057.89.[3] (*Id.*) Kilgour filed a proof of claim (Claim No. 4) asserting a general unsecured claim against the Debtor in the amount of $598,057.89.[4] (*Id.*) The Plaintiffs/Appellees filed a proof of claim (Claim No. 5) asserting a general unsecured claim against the Debtor in the amount of $489,460.49 on account of the December 24, 2020 judgment awarding legal fees, plus post-judgment interest. (*Id.*; *see also* Claim 5-1.)

On December 6, 2021, the Department of Treasury/Internal Revenue Service ("IRS") filed a proof of claim (Claim No. 6) against the Debtor asserting an unsecured priority claim in the amount of $153,232.34 and a general unsecured claim in the amount of $163,889.15. (*See* Claim 6-1.)

### G.    The Stipulation

As a result of the Chapter 7 filing, the Debtor's remaining rights, if any, in the Whistleblower Award and in the litigation claims with the Plaintiffs/Appellees became property of the estate. The issues here largely revolve around the merits of the Appeal from the Summary

---

[2] This amount is comprised of the Judgment amount ($247,500) plus pre-Judgment interest ($39,484.73), post-Judgment interest ($19,836.41), and associated costs ($328.33). (*See* Claim 2-1 at 4.)

[3] This amount is comprised of the Judgment amount ($1,250,000) plus pre-Judgment interest ($199,417.81), post-Judgment interest ($52,174.93), associated costs ($328.33), minus payments that were made toward satisfying the Judgment amount (-$900,000). (*See* Claim 3-1 at 4–5.)

[4] This amount is comprised of the Judgment amount ($1,250,000) plus pre-Judgment interest ($199,417.81), post-Judgment interest ($52,174.93), associated costs ($328.33), minus payments that were made toward satisfying the Judgment amount (-$900,000). (*See* Claim 4-1 at 4–5.)

Judgment Order in favor of the Plaintiffs/Appellees that was filed but not prosecuted before the Chapter 7 filing. The Trustee explains that its professionals—both its bankruptcy counsel and litigation counsel—have "reviewed the very extensive docket in the State Court Action, thoroughly analyzed the Trustee's possibility of success in the Appeal, and then engaged in negotiations with Plaintiffs' counsel regarding the Appeal, which resulted in the Stipulation." (Joint Statement ¶ 47.)

The salient terms of the Stipulation are as follows:

- The Plaintiffs/Appellees shall pay to the Trustee, on behalf of the Debtor's estate, the total amount of $22,500 (the "Settlement Payment"), in settlement of all claims of the Debtor and the bankruptcy estate in the Appeal.

- Upon the date an order approving the Stipulation becomes a Final Order, Claim Nos. 2, 3, 4 and 5 shall be deemed allowed claims and the Trustee waives any right to object to same. The Plaintiffs/Appellees shall not file any proofs of claim in the Debtor's bankruptcy case pursuant to section 502(h) of the Bankruptcy Code in connection with the Settlement Payment, nor shall the Plaintiffs/Appellees file any other claims in the Debtor's bankruptcy case.

- The parties shall be deemed to have released each other and those additional representatives affiliated with each of them, as set forth in the Stipulation, from all claims of any kind, other than with respect to their obligations under the Stipulation, and the Stipulation shall not waive or affect Claim Nos. 2, 3, 4 and 5.

(*Id.* ¶ 48; Motion, Ex. A.)

### H.     The Objection

The Debtor's Objection argues that he should not be responsible for paying taxes to the IRS based on the Whistleblower Award and that taxes should be paid out of the Whistleblower Award before any payments to the Plaintiffs/Appellees to the extent that funds remain available. (Objection ¶¶ 1–3.) With respect to approval of the Stipulation, the Debtor makes a conclusory argument that the "Trustee and her attorney examined neither the underlying case in [the State Court] nor the merits of the [A]ppeal." (*Id.* ¶ 4 ("It is unreasonable for the Trustee to settle the [A]ppeal for less than a penny on the dollar with no consideration for its merits.").) The Debtor

10

also argues that the Summary Judgment Order was based on "flimsy emails" and the Debtor was not given leave to present his case or bring witnesses. (*Id.*)

### I. The Hearing

At the Hearing, Trustee's counsel argued the Trustee and her counsel concluded, based on many hours reviewing the numerous pleadings in the State Court Action, the Trustee's chances of success on the Appeal are not good. (Hr'g Tr. at 5:22-25–6:1-5.) The Debtor explained that he was not arguing that the Trustee did not make an educated decision on the prospects of the Appeal, but only that the Trustee and her counsel did not speak to the Debtor about the merits of the Appeal. (*Id.* at 19:8-17.) The Court found the conclusory papers submitted on the Motion unhelpful in understanding the factual background underlying the State Court's decision in the Summary Judgment Order (*id.* at 4:13-25–5:1). The Court ordered the parties to file additional papers to supplement the Motion and Objection. (*Id.* at 27:8-14.)

### J. The Joint Statement

The Joint Statement provides additional background facts on the dispute between the Debtor and the Plaintiffs/Appellees and states that the "Trustee believes the [Stipulation] is fair and reasonable, and in the best interest of the Debtor's estate." (Joint Statement ¶¶ 5–37, 49.) Additionally, the Joint Statement provides that:

> Trustee believes that if she were to litigate the Appeal, she likely would not be successful. The [State] Court determined as a matter of law that the Debtor anticipatorily breached the Letter Agreement. This holding would likely be affirmed. The [Summary Judgment] Order granting summary judgment on anticipatory breach of contract is well supported by the fact and the law.

(*Id.* ¶ 56.)

### K. The Response

The Debtor's Response asserts that the State Court's "decisions were self-contradictory, and the result was clearly unjust." (Response at 2.) The Debtor argues that the Summary

11

Judgment Order did not provide enough justification for its summary judgment decision and was wrongly decided because the Debtor did not anticipatorily breach the Letter Agreement. (*Id.* at 3 ("[T]he Letter Agreement is silent about any other action I take or instruction I make that contradicts KWG's self-proclaimed right to the monies. It only states that I would make a specific request to the SEC.")). The Debtor also states his view that the Summary Judgment Order "is very likely to be overturned on appeal." (*Id.*) Finally, the Debtor argues that the Stipulation is not fair and equitable because (i) it leaves the Debtor with a non-dischargeable tax debt, (ii) the Trustee and counsel did not communicate with the Debtor and there is no evidence of consideration of the Debtor's arguments for the merits of the Appeal, and (iii) the Joint Statement contains no analysis or justification of the Summary Judgment Order. (*Id.* at 5.)

## II.    LEGAL STANDARD

Settlements are generally favored in bankruptcy because they "minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *In re MF Global, Inc.*, 2012 Bankr. LEXIS 3701, at *15 (Bankr. S.D.N.Y. 2012) (citing *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996)). Pursuant to Rule 9019 of the Bankruptcy Rules, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a). To approve a settlement, a bankruptcy court must determine that it "is fair and equitable and in the best interests of the estate." *In re Drexel Burnham Lambert Grp. Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)) (internal quotation marks omitted).

In making its fair and equitable determination, the bankruptcy court is not required to "conduct a mini-trial of the facts or the merits underlying the dispute." *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010) (internal quotation marks omitted). Instead, a court

"must inform itself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated," *In re Kerner*, 599 B.R. 751, 755 (Bankr. S.D.N.Y. 2019) (internal quotation marks omitted), and "'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *Id.* (quoting *In re Chemtura Corp.*, 439 B.R. at 594).

A court "may give weight to the informed judgments of the trustee or debtor-in-possession and their counsel that a compromise is fair and equitable and consider the competency and experience of counsel who support the compromise." *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (internal citations omitted); *see also Depo v. Chase Lincoln First Bank, N.A.*, 77 B.R. 381, 384 (N.D.N.Y. 1987), *aff'd sub nom. Depo v. Lincoln Bank*, 863 F.2d 45 (2d Cir. 1988) ("In determining whether to approve the trustee's application to settle a controversy, the bankruptcy court does not substitute its judgment for that of the trustee."); *see also In re Kerner*, 599 B.R. at 756 (noting that "[t]he Court may consider the informed judgments of the Trustee and Trustee's counsel" and finding "little reason to second guess the Trustee's good faith business judgment that the Stipulation is reasonable"). Indeed, approval of a settlement is appropriate even where a court believes that the trustee ultimately would be successful at trial. *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505; *see also In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other."). !

The Second Circuit set forth the following interrelated factors ("*Iridium* Factors") for a court to consider in determining whether a settlement is fair and equitable:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and

13

>protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007) (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

The decision to approve or deny a settlement is within the sound discretion of the bankruptcy court. *In re Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (internal citations omitted).

### III.    DISCUSSION

The Court has considered the *Iridium* Factors to the extent applicable in the circumstances. These factors weigh in favor of approving the Stipulation.

> *1.    The balance between the litigation's possibility of success and the settlement's future benefits*

This factor weighs in favor of the Stipulation. The Trustee's bankruptcy counsel and the Trustee's litigation counsel represent that they spent numerous hours reviewing the pleadings and other documents filed in the State Court Action and have concluded the Trustee has a low possibility of success in the Appeal. (Joint Statement ¶¶ 53, 56; Hr'g Tr. at 5:22-25–6:1-5.) The Court gives deference to these conclusions made by the Trustee and the Trustee's professionals. *See In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. at 505. The Debtor states that in his view the Appeal is "very likely" to succeed. (Response at 3.) The Court has reviewed the

14

relevant underlying filings in the State Court Action, including the Summary Judgment Order, and agrees with the Trustee that the possibility of success in the Appeal does not appear strong. Additionally, the Debtor's estate currently has no funds and so the Stipulation will benefit the estate by providing it with the Settlement Payment. (Joint Statement ¶ 57.)

> 2. *The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment*

This factor weighs in favor of the Stipulation. Pursuing the Appeal would be costly and cause delay. Here, the Debtor's estate has no funds, and the Trustee cannot pay the expenses that would be associated with pursing the Appeal. (Joint Statement ¶ 61 ("Since the Trustee would not be able to assure any appellate counsel it would be paid its fees, the Trustee would probably not have retained counsel to litigate the Appeal.").)

> 3. *The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement*

This factor also weighs in favor of the Stipulation. First, the three Plaintiffs/Appellees are each creditors of the Debtor's estate and are parties to the Stipulation. Second, there is only one creditor that filed a timely general unsecured claim, Calvary SPV I, LLC, and it did not object to the Stipulation. The Debtor argues that the IRS is a creditor that the Trustee failed to consider in connection with seeking approval of the Stipulation. (Response at 3.) The Court notes that at the time that the Motion and Joint Statement were filed, the IRS had not yet filed its proof of claim in this Chapter 7 case. In any event, like the other creditors of the Debtor's estate, the IRS did not object to the Stipulation.

> 4. *Whether other parties in interest support the settlement*

This factor is either neutral or weighs slightly against the Stipulation. The Debtor is opposed to the Stipulation and there are no other parties in interest (other than the Trustee and

15

Plaintiffs/Appellees) that affirmatively support the Stipulation. However, since there is a small number of total creditors in this Chapter 7 case—only two claims were filed by creditors other than the Plaintiffs/Appellees—this factor is either neutral or weighs only slightly against the Stipulation.

       5.     *The competency and experience of counsel supporting the settlement*

This factor weighs in favor of the Stipulation. The Trustee is represented by Tarter Krinsky & Drogin, LLP ("TKD"), which has extensive experience in representing Chapter 7 trustees. Additionally, both bankruptcy and litigation attorneys with TKD carefully analyzed the merits of the Appeal and concluded that there was a low likelihood of success.

       6.     *The nature and breadth of releases to be obtained by officers and directors*

This factor is not relevant because the Stipulation does not provide for any releases of officers or directors. (Joint Statement ¶ 66; Motion, Ex. A.)

       7.     *The extent to which the settlement is the product of arm's length bargaining.*

This factor weighs in favor of the Stipulation. The Trustee submits that the Stipulation is the product of arm's length bargaining between the Trustee's counsel and the Plaintiffs/Appellees' counsel. (Joint Statement ¶ 67.) Although the Debtor questions the arm's length nature of the bargaining (Response at 6), there is no evidence refuting the Trustee's representations that she, her counsel, and the Plaintiffs/Appellees' counsel reached the Stipulation through arm's length, proper negotiations.

In sum, the *Iridium* Factors weigh heavily in favor of approving the Stipulation and demonstrate to the Court that the Stipulation is well within the range of reasonableness.

## IV. CONCLUSION

For the reasons provided above, the Court **OVERRULES** the Debtor's Objection and **GRANTS** the Trustee's Motion to approve the Stipulation. The *Iridium* Factors weigh in favor of the Stipulation. These factors alone provide a sufficient basis for the Court to approve the Stipulation. The arguments by the Debtor presented in the Objection and Response are unpersuasive.

Dated:   December 10, 2021
         New York, New York

                                    *Martin Glenn*
                                    MARTIN GLENN
                                    United States Bankruptcy Judge